UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| F.G. CROSTHWAITE AND RUSSELL E. BURNS, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>TIM KRUSE CONSTRUCTION, INC.,<br><br>　　　　Defendants. | Case No.   13-cv-00496-JSW (NJV)<br><br>**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 32 |

## INTRODUCTION

Defendant Tim Kruse Construction, Inc. hired members of Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO to perform work in 2011 through 2013. Defendant entered into a collective bargaining agreement with the Union, which required Defendant to report the work hours of Union members he employed and to pay employee contributions on behalf of the Union members. Plaintiffs filed this action, alleging that Defendant failed to accurately report member hours and failed to pay required employee contributions. When Defendant did not respond to the complaint, Plaintiffs moved for entry of default, and subsequently moved for default judgment. *See* Doc. Nos. 10, 32. The district court referred the motion for default judgment to the undersigned for a report and recommendation. *See* Doc. No. 40.

For the reasons set forth below, the undersigned will recommend that the district court GRANT Plaintiffs' motion for default judgment and enter default judgment against Defendant.

# BACKGROUND

**A. Factual Background[1]**

"Plaintiffs" in this action include (1) the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO (the "Union"); (2) the Operating Engineers' Health and Welfare Trust Fund for Northern California; Pensioned Operating Engineers' Health and Welfare Trust Fund (which includes the Addiction Recovery Program, Inc.); Operating Engineers Pension Trust Fund (which includes the Operating Engineers Annuity Trust Fund); and the Operating Engineers' Vacation and Holiday Pay Plan, all of which are employee benefit plans as defined under ERISA, 29 U.S.C. § 1002(3) (the "ERISA Plaintiffs"); (3) F.G. Crosthwaite and Russel Burns, the trustees and fiduciaries of the ERISA Plaintiffs; (4) the Heavy and Highway Committee, a Trust established under the LMRA, 29 U.S.C. § 186(c)(9) (the "Trust"); and (5) Greg Trento, trustee and fiduciary of the Trust. *See* Doc. No. 1 (Complaint ("Compl.")) ¶¶ 1-3.

Defendant Kruse is a California corporation. Compl. ¶ 4; *see also* Doc. No. 34 (Declaration of Muriel Kaplan ("Kaplan Decl.")), Ex. A. It is an "employer" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA), 29 U.S.C. § 1002(5), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2). *Id.*

Kruse entered into a collective bargaining agreement ("CBA") with the Union. Compl. ¶ 11. The CBA required Kruse to "submit monthly reports of hours worked by [its] employees," and to regularly pay to the ERISA Plaintiffs, the Trust, and the Union "certain sums of money, the amounts of which are determined by the hours worked by employees of Defendant." *See id.* ¶¶ 4, 13, 15, 18; *see also* Doc. No. 33 (Declaration of David Hayner ("Hayner Decl.")), Ex. A at pp. 6-8 (describing payments due to ERISA Plaintiffs, the Trust, and the Union) & Ex. B at pp. 42-44. The CBA also required Kruse to make payments into the Job Placement Center and Market Area committee Administration Market Preservation Fund and the Contract Administration Trust Fund

---

[1] Upon default, all factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 599 F.2d 557, 560 (9th Cir. 1977)). This factual background accordingly accepts the facts of the complaint as true.

United States District Court
Northern District of California

(the "Bargained Plans").  Compl. ¶ 11.  The Bargained Plans are not named plaintiffs in this action, but Plaintiffs' trustees are assigned under the CBA to receive and administer the funds due to the Bargained Plans.  *Id*.  Under the CBA, Kruse agreed to pay liquidated damages on each delinquent contribution.  Compl. ¶ 13.  Kruse also agreed to pay interest on the combined unpaid contributions and liquidated damages.  *Id*.  Finally, the CBA provided for reasonable attorneys' fees, auditors' and accountants' fees, court costs, and other reasonable expenses incurred in connection with a suit to recover unpaid contributions from Kruse.  Compl., Prayer ¶ g.

Kruse submitted monthly reports detailing the hours worked by its employees during the months of November and December 2011 but failed to pay the required employee contributions for those hours.  Compl. ¶ 16.  In addition, Kruse failed to submit monthly reports detailing the hours worked by its employees during the months of October, November and December 2012, and also paid no contributions for the hours worked by its employees during those months.  *Id*.  (Plaintiffs also have submitted materials in support of their motion for default judgment showing that Kruse paid no employee contributions for hours worked by its employees through June 2013.  *See* Hayner Decl.)  Kruse has not paid liquidated damages or interest on any of the unpaid employee contributions.  *Id*.

**B. Procedural Background**

On January 2, 2013, counsel for Plaintiffs sent a demand letter to Defendant for payment of unpaid contribution, liquidated damages, and interest.  *See* Kaplan Decl. ¶ 4.  On February 5, 2013, after Defendant failed to respond to Kaplan's demand letter, Plaintiffs filed a complaint seeking from Defendant reports of hours worked and unpaid contributions due for employee hours worked; liquidated damages; interest; and attorneys' fees and costs incurred by Plaintiffs in connection with this action.  *See id*., ¶ 5; *see also* Compl. at 6-7.  Plaintiffs seek relief under the terms of the CBA and ERISA.  *Id*.

Plaintiffs personally served Defendant with a copy of the summons and complaint on February 22, 2013.  Doc. No. 8.  When Defendant failed to appear, Plaintiffs requested entry of default.  Default was entered on March 29, 2013.  Doc. No. 11.

On May 1, 2013, Tim Kruse (Defendant's principal) contacted Kaplan hoping to resolve

3

the matter. Kaplan Decl. ¶ 7. Kaplan and Kruse continued to exchange correspondence, and although Defendant submitted two payments totaling $6,000 toward its unpaid contributions, Kruse subsequently failed to respond to Plaintiffs' numerous demand letters or to this lawsuit. *Id*. ¶¶ 8-11 & Exs. D & E.

On February 14, 2014, Plaintiffs filed their Motion for Default Judgment. Doc. No. 32. In their motion, Plaintiffs seek entry of judgment by default, ordering Defendant to make payment on delinquent employee contributions, pay liquidated damages and interest, as well as attorneys' fees and costs. *Id*. at 18. Plaintiffs served a copy of their motion on Kruse, and served Kruse with a copy of the court notice continuing the hearing on the motion. *See* Doc. Nos. 36 & 43. When Kruse still failed to appear in the action, Plaintiffs requested that their motion for default judgment be decided without a hearing. Doc. No. 44. Finding that this matter may be decided without oral argument pursuant to N.D. Civ. L.R. 7-1(b), the undersigned granted the request, but ordered Plaintiffs to provide additional evidence in support of their motion. Doc. No. 45. Plaintiffs filed the requested declarations. Doc. Nos. 47-51, 56-57. As of the date of this Report & Recommendation, Defendant still has not appeared in the action.

## DISCUSSION

### A. Legal Standards

After entry of default, the court may enter a default judgment. Fed. R. Civ. P. 55(b). The decision to grant or deny a default judgment is within the court's discretion. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The court first must look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court also "must assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, *2 (N.D. Cal. Jan. 2, 2001).

Once the court determines that jurisdiction exists and service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

4

> dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). All factual allegations in the complaint are taken as true upon default, except those relating to damages. *TeleVideo Sys.*, 826 F.2d at 917-18. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B. Analysis**

    **1. Subject Matter and Personal Jurisdiction Exist.**

The complaint alleges that Defendant violated provisions of ERISA (29 U.S.C. § 1132), and failed to perform its obligations under the LMRA (29 U.S.C. § 185). Compl. ¶¶ 1-2, 18. Each of these statutes vests subject matter jurisdiction in the federal courts. *See* 29 U.S.C. § 1132(e)(1) ("… the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, fiduciary…."); 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties"). More generally, district courts also have original jurisdiction to hear civil cases arising under the laws of the United States. *See* 28 U.S.C. § 1331. The district court therefore has subject-matter jurisdiction because these claims arise under federal law.

The district court also may exercise personal jurisdiction over Defendant on two separate grounds. Defendant is an active California corporation doing business in California (Compl. ¶ 4; Kaplan Decl., Ex. A) and thus is subject to personal jurisdiction in any court located in California. In addition, any ERISA enforcement action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Defendant is an "employer" and the ERISA plans at issue in this action are administered in this district and the breach of these plans took place in this district (Compl. ¶¶ 4, 8,

5

1    10), Defendant accordingly is also subject to personal jurisdiction in this district on that ground.

### 2. Service of Process Was Adequate.

Service was adequate to perfect the district court's authority to exercise personal jurisdiction over Defendant. Delivering a copy of the summons and complaint to the individual being sued is an adequate means of serving process on that individual. *See* Fed. R. Civ. P. 4(e)(2)(a). The proof of service Plaintiffs filed with the court establishes that a professional process server personally delivered the summons and complaint to a person authorized to accept service on behalf of Defendant on March 22, 2013. Doc. No. 8. In addition, Defendant is an active corporation and is accordingly not a minor, an incompetent person, nor a member of the military. *See* Kaplan Decl., Ex. A.

### 3. The *Eitel* Factors Favor Default Judgment.

#### a. Possibility of Prejudice

The complaint alleges that Defendant failed to pay funds owed to the Plaintiffs under the CBA. Plaintiffs would be prejudiced absent entry of default judgment because they will be left without a remedy to collect the funds owed. *See, e.g., U.A. Local No. 467 Trust Fund v. Hydra Ventures, Inc.*, 2013 U.S. Dist. LEXIS 34931, \*6 (N.D. Cal. Mar. 13, 2013). The first *Eitel* factor favors default judgment.

#### b. Merits of the Claims and Sufficiency of the Complaint

The second and third *Eitel* factors address the sufficiency of Plaintiffs' complaint and probability of success on the merits of their underlying claims. Plaintiffs' claims are based on a violation of 29 U.S.C. § 1145, which creates a federal cause of action against employers who are delinquent in contributions they are obligated to make to employee benefit plans under the terms of a plan or collective bargaining agreement: "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement …, to the extent not inconsistent with the law, [must] make them in accordance with the terms of such plan or such agreement."

In order to state a claim under 29 U.S.C. § 1145, Plaintiffs must allege that: (1) Kruse is an "employer" under the statute; (2) the CBA obligated Kruse to make the employee benefit

contributions Plaintiffs seek to recover; and (3) Kruse failed to make the required contributions. *See Bd. of Trs. of the Laborers Health & Welfare Trust Fund for Northern California, et al. v. A & B Building Maintenance Co.*, 2013 U.S. Dist. LEXIS 149888, at *10 & n.5 (N.D. Cal. Oct. 1, 2013) ("*A&B*") (listing elements of Section 1145 claim). Plaintiffs sufficiently plead each of these elements in the complaint. *See* Compl. ¶ 4 (Kruse is an "employer"), ¶ 11 (Kruse and Plaintiffs entered into the CBA, which required Kruse to make payments to Plaintiffs), ¶ 13 (the CBA required Kruse to submit monthly reports of hours worked and regularly pay to Plaintiffs certain sums determined by the hours worked by its employees), ¶ 16 (Kruse failed to make the required contributions for five months). Accordingly, Plaintiffs have adequately demonstrated a substantial likelihood of success on the merits of their underlying claim.

   c. Amount of Money at Stake

When the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions and supported by proper documentation and evidence in the record, default judgment is appropriate. *See Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 U.S. Dist. LEXIS 100237, at *32-*34 (N.D. Cal. March 22, 2007). The complaint alleges that Kruse owes Plaintiffs unpaid contributions, liquidated damages, interest, and attorneys' fees and costs, but it does not specify the amounts allegedly owed. David Hayner, the Collections Manager for the Union, submitted declarations in support of Plaintiffs' motion for default judgment. *See* Doc. Nos. 33 & 57. Hayner declares that Defendant owes $23,012.66 in unpaid contributions through June 2013; $8,638.87 in liquidated damages on those unpaid contributions; and $3,862.75 in interest on unpaid funds through May 5, 2014, for a total owed of $36,514.28. Doc. No. 33 at p. 6; *see also* Doc. No. 57 (Amended Supp. Hayner Decl.).[2] In addition, Plaintiffs have incurred attorneys' fees

---

[2] Hayner calculated the contributions Defendant failed to pay for November and December 2011, and Plaintiffs' counsel estimated the contributions Kruse failed to pay for work performed from October 2012 through June 2013. Doc. No. 33 at 6; Doc. Nos. 47 & 57. The contributions owed for those periods where Kruse did not report hours were estimated by Plaintiffs' counsel using the procedures required by the Union's delinquency collection procedures. Hayner Decl. ¶¶ 9-13 & Exs. E & F; Doc. Nos. 47 & 57 ¶¶ 2, 6. Hayner calculated the liquidated damages on those contributions he calculated; Plaintiffs' counsel calculated the liquidated damages on the estimated contributions. Doc. No. 47; Doc. No. 57. Plaintiffs' counsel also calculated the interest owed on all the delinquent payments. Kaplan Decl. ¶ 12; Doc No. 57 ¶¶ 3-4.

1  in the amount of $14,431.50 through May 5, 2014. Kaplan Decl. at 18; *see also* Doc. No. 47

2  (Supp. Kaplan Decl.).

3         The damages Plaintiffs request are permitted under the CBA, supported by proper

4  documentation, and reasonably proportionate to the harm caused by Kruse's failure to abide by the

5  terms of the CBA and the requirements of ERISA. This *Eitel* factor weighs in favor of default

6  judgment.

          d.   Possibility of Dispute Concerning Material Facts

8         Although Kruse has not filed an answer to the complaint nor opposed the motion for

9  default judgment, the terms of the CBA (which Plaintiffs have filed with their motion for default

10 judgment) and the declarations of Hayner and Kaplan demonstrate that the possibility of dispute

11 concerning the material facts of the complaint is small. *See* Doc. Nos. 1, 33, 34, 47, 57. This

12 factor also weighs in favor of default judgment.

          e.   Whether Default was Due to Excusable Neglect

14        Plaintiffs personally served Kruse with a copy of the summons and complaint. Doc. No. 8.

15 Plaintiffs' counsel repeatedly discussed the lawsuit with Kruse's principal. *See* Kaplan Decl. ¶¶ 7-

16 11. Kruse made two payments towards its delinquent contributions after Plaintiffs filed their

17 lawsuit. *Id*. ¶ 9-10. Plaintiffs served Kruse with a copy of their motion for default judgment and

18 with a copy of the court's notice continuing the hearing thereon. *See* Doc. Nos. 36 & 43; *see also*

19 Doc. No. 46 (serving court's order vacating hearing and ordering further evidence). Kruse has not

20 answered the complaint, opposed the motion for default judgment, or otherwise appeared. This

21 suggests that the possibility that default resulted from Kruse's excusable neglect is small. This

22 *Eitel* factor also weighs in favor of default judgment.

          f.   Policy for Deciding on the Merits

24        The Federal Rules favor a decision on the merits whenever possible (*Eitel*, 782 F.2d at

25 1472), and thus this factor by definition weighs against granting default judgment. But where a

26 defendant fails to respond to a complaint, a decision on the merits is impractical, if not impossible.

27 Ultimately, the preference to decide the cases on the merits does not preclude a court from

28 granting default judgment. *See, e.g., PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172,

8

1177 (C.D. Cal. 2002).

**C. Damages.**

A plaintiff who prevails on a Section 1145 claim is entitled to obtain a judgment for the unpaid contributions; interest on the unpaid contributions; "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) the liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions; reasonable attorneys' fees and costs; and such other legal or equitable relief the court deems appropriate. *See* 29 U.S.C. § 1132(g)(2). Plaintiffs request a judgment that includes all of these categories. *See* Compl. at 6-7.

Hayner authenticated copies of the CBA and amendments thereto, which set out the amount due to the ERISA Plaintiffs, the Trust, the Bargained Plans, and the Union for each hour of work a Union member performed. *See* Doc. No. 33 ¶¶ 2-6 & Exs. A-C. Applying the relevant Trust procedures, Hayner and Kaplan calculated that the total amount of Kruse's unpaid contributions (adjusted for two payments Kruse made after the action was filed) is $23,012.66. *See* Doc. No. 33 at 6; *see also* Doc. No. 47 ¶ 2 & Doc. No. 57 ¶¶ 2, 4-6. The CBA provides that Plaintiffs may assess 10% liquidated damages on unpaid contributions to ERISA funds and 20% liquidated damages on unpaid contributions to those funds after a lawsuit is filed; Plaintiffs may not assess liquidated damages on contributions owed to non-ERISA funds. Doc. No. 33 ¶ 15. Hayner and Kaplan calculated the liquidated damages due by Kruse under the terms of the CBA. Doc. No. 33 ¶¶ 6, 15; Doc. No. 34 ¶ 12; Doc. No. 47 ¶ 2. Kruse owes $8,638.87 in liquidated damages. Doc. No. 33 at 6; Doc. No. 47 ¶ 2. Kaplan also calculated the interest owed on Kruse's declining balance. Hayner and Kaplan explained how Kaplan's office performed the calculations. Doc. No. 34 ¶ 12; Doc. No. 57 ¶¶ 3-4. Kruse owes $2,886.63 in interest through February 13, 2014, and an additional $482.78 in interest through May 5, 2014. Hayner Decl. at 6; Doc. No. 57 ¶¶ 3-4. The Trust documents provide that interest will continue to accrue at the rate of 10% until delinquencies are paid. Doc. No. 33 ¶ 6 & Exs. A-C. Interest after May 5, 2014 will continue to accrue at the rate of $6.31 *per diem*. Doc. No. 57 ¶ 4. The undersigned finds that Plaintiffs have established their entitlement to unpaid contributions, liquidated damages and pre-judgment interest, and have offered evidence to prove up the damages requested above. The undersigned

9

therefore recommends that the court award the full amount of damages requested.

Plaintiffs also request attorneys' fees. Plaintiffs seek to recover $6,213 for the 28.9 hours Kaplan has billed on the case, at a rate of $215 per hour; $168 for the .8 hours another shareholder (Michele Stafford) billed on the case, at a rate of $210 per hour; $82 for the .4 hours an associate (Shivani Nanda) billed on the case, at a rate of $205 per hour; and $7,968 for 66.4 hours three paralegals (Elise Cotterill, Alicia Rutkowski, Michelle Valentine) billed on the case, at a rate of $120 per hour. Doc. No. 47 ¶ 3. Each of these time keepers submitted declarations verifying the hours they billed and describing the tasks for which they billed, and the undersigned finds that their fees were reasonably billed in connection with this matter. *See* Doc. Nos. 34, 47-51, 56. Furthermore, the undersigned finds that the timekeepers' rates are reasonable. *See A&B*, 2013 U.S. Dist. LEXIS 149888, *16 (reviewing rates in other ERISA cases in San Francisco Bay Area and finding rates of $345 for shareholder and $290 for associate were reasonable). The court notes that Kruse's conduct caused Plaintiffs' counsel to engage in extensive correspondence and efforts to reach a stipulated judgment rather than continue litigation (Doc. Nos. 34 ¶ 13 & 47 ¶ 3), the court finds that the fees billed by Plaintiffs' counsel on this case are reasonable. The court therefore recommends that Plaintiffs recover $14,431.50 in attorneys' fees.

Finally, Plaintiffs seek to recover $544.85 in costs they incurred for their filing fee and service on Kruse. Doc. No. 34 ¶ 15. These costs are both reasonable and permissible under Federal Rule of Civil Procedure 54(d)(1), and N.D. Civ. L.R. 54-3(a). The court therefore recommends awarding Plaintiffs the full $544.85 they request for costs.

**D. Post-Judgment Interest Rate.**

Post-judgment interest is mandatory. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment"). Rather than request the post-judgment rate specified in 28 U.S.C. § 1961(a), however, Plaintiffs seek to have the court apply the 10% interest rate that is set out in the CBA. *See* Doc. No. 54 (Amended [Proposed]

10

1  Judgment). This 10% interest rate is the rate that the parties agreed was applicable to

2  delinquencies: "Unpaid contributions shall accrue late interest charges from the delinquent date

3  until paid, at the rate of 10% per year simple interest beginning on the delinquent date." Hayner

4  Decl., Ex. A at § 13.01.02; *see also id.*, Ex. B at § 12.13.02 & Ex. C at ¶ 1(A)(4).

While parties can contract around the rate specified in 28 U.S.C. § 1961(a), they must do so explicitly. *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (citing *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998)). Parties desiring to adopt a post-judgment interest rate other than that specified in 28 U.S.C. § 1961(a) "must specifically contract around the general rule that a cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for post-judgment purposes. If parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through clear, unambiguous and unequivocal language." *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) (internal quotation marks and citations omitted); *see also FCS Advisors, Inc. v. Fair Finance Co.*, 605 F.3d 144, 147 (2d Cir. 2010) ("parties are free to agree to a different post-judgment interest rate by contract, provided that they do so through 'clear, unambiguous and unequivocal language'") (citations omitted).

The contractual provisions Plaintiffs rely upon to request a 10% post-judgment interest rate discuss the interest rate that shall accrue on unpaid contributions in the event of late payment or delinquency. *See* Hayner Decl., Ex. A at § 13.01.02, Ex. B at § 12.13.02, Ex. C at ¶ 1(A)(4). These provisions do not expressly state that the parties agree to a specified post-judgment interest rate, nor expressly state that the parties agree to contract around 28 U.S.C. § 1961(a). In the absence of "clear, unambiguous, and unequivocal language" in the parties' contracts, the undersigned recommends that the post-judgment interest rate applicable in this action should be the rate governed by 28 U.S.C. § 1961(a), not the 10% interest rate applicable to delinquencies.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion For Default Judgment be granted, and that Judgment be entered for Plaintiffs and against Kruse as follows:

$23,012.66 for unpaid contributions;

11

$8,638.87 for liquidated damages on delinquent contributions;

$3,862.75 for interest through May 5, 2014 on delinquent contributions and liquidated damages, with interest accruing at $6.31 *per diem* after that date until entry of judgment;

$14,431.50 for attorney's fees; and,

$544.85 for costs of suit.

In total, the undersigned recommends that Judgment be entered in a total amount of $50,490.63, with interest accruing after May 5, 2014 at the rate of $6.31 *per diem* until entry of judgment.

Plaintiffs further request that the district court retain jurisdiction over the matter, and the undersigned recommends that the district court do so.

Plaintiffs are ordered to serve a copy of this Report and Recommendation on Kruse immediately, and to file a proof of service with the court.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO ORDERED**.

Dated: May 9, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge